**Opinion issued July 7, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-15-00280-CR

———————————

**JEMARCUS LATRON GREEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1398059

## O P I N I O N

Appellant Jemarcus Latron Green was charged by indictment with capital murder. A jury found Green guilty, and the trial court assessed punishment at life, without the possibility of parole, in the Texas Department of Criminal Justice, Institutional Division. By four issues, Green contends that the trial court erred

because (1) it failed to instruct the jury that his girlfriend, Kristan Daniels, was an accomplice as a matter of law; (2) its accomplice-in-fact charge failed to instruct the jury that Daniels could be an accomplice as a co-conspirator; (3) Daniels's accomplice witness testimony was not adequately corroborated; and (4) insufficient evidence supports Green's conviction. We affirm.

## Background

On August 6, 2012, Jimmy Wooten was shot and killed outside his home. Green supplied the murder weapon and was tried for Wooten's murder.

*Wooten's Murder*

Wooten's lifelong friend, Louis Hines, witnessed the shooting. Hines testified that he was sitting on the front porch of a nearby house with Kevin Mitchell, waiting for Wooten to go clubbing. When Wooten came out of his house a couple doors down, Hines saw two black men approach Wooten. Hines described one of the men as tall and dark-skinned and described the other as lighter-skinned and slightly shorter. Hines watched briefly as the men talked to Wooten, before turning back to talking with Mitchell. Hines testified that his attention only turned back to Wooten and the two men when he heard Wooten loudly say, "you got me fucked up." Then Hines heard a gunshot, which he testified was fired by the taller, darker man. Hines testified that Mitchell took off running at the sound of the first shot. Hines saw Wooten fall to the ground, and

2

then the shooter turned and started firing at Hines, leading Hines to conclude that he was using an automatic.

Hines testified that a friend drove up and "snatched [Hines into] the car." As his friend drove away, Hines jumped out of the car and ran back to check on Wooten. As he turned the corner, he saw the shooter taking Wooten's pants and shoes. Hines testified that he watched from a distance as the shooter then ran off between the houses.

Wooten died at Ben Taub Hospital later that night. Dr. Sara Doyle with the Harris County Medical Examiner's Office performed Wooten's autopsy and determined that cause of death was a single gunshot wound to his neck, which perforated his cervical spine. Dr. Doyle testified that she observed soot and stippling around the wound, suggesting that the weapon was held within six inches of Wooten's body when fired.

Officer N. Castillo of the Houston Police Department ("HPD") responded to the shooting. Officer Castillo testified that HPD officers found four spent shell casings at the scene. Officer E. Aguilera with the Crime Scene Unit added that the shell casings were all either 9-millimeter Luger Blazers or Luger Wins. Officer Aguilera testified that he had not determined whether all four shell casings were fired by the same weapon.

Officer B. Nabors of HPD's Homicide Division investigated Wooten's murder. After speaking with Wooten's girlfriend, Regina Flakes, Nabors and his partner interviewed Kristan Daniels, who was Green's girlfriend at the time. After their first interview with Daniels, they developed Green and a second man known as "K.D." as suspects.

*Daniels's Testimony*

At trial, Daniels asserted her Fifth Amendment privilege against self-incrimination. The State moved to compel her testimony on the promise of use immunity, and the trial court granted the motion.

According to Daniels, at the time of the charged offense, she had been living with Green at his father's house for roughly six months. On the date of the offense, she and Green spent the daytime hours together watching television and smoking marijuana. Later in the day, two of Green's friends joined them: K.D. and Pac. Daniels testified that the four of them were driving around in her car that afternoon when Green, K.D., and Pac started talking about needing "some quick money." According to Daniels, Green hatched the idea to make some quick money by robbing Jimmy Wooten. Daniels did not know Wooten, but Green knew him as a local drug dealer and reasoned that Wooten's line of work would keep him from reporting a robbery. Daniels testified that K.D. and Pac agreed to rob Wooten, and Green started to drive the group back to his house. As they were driving, Green

4

pointed Wooten out to K.D. by saying, "There go Woo right there." When they got back to Green's house, Green went inside to get a gun and gave the gun to K.D.

Daniels testified that she stayed at Green's house while Green dropped K.D. off near Wooten's, which took roughly three minutes. Shortly after Green got back to the house, Daniels heard four gun shots. Daniels testified that she and Green were both shocked to hear the gun shots. Green hopped back into her car, telling her that he was off to look for K.D. Green returned to the house alone sometime later, and the two waited at Green's house.

Daniels testified that, later that night, K.D. arrived at Green's house covered in dirt with $140 in cash. According to Daniels, K.D. said someone had shot at him and he shot back with the gun Green had given him. K.D. explained to Daniels and Green that he had since been hiding in the crawl space under Wooten's house. K.D. returned the gun to Green and, on Green's suggestion, K.D. split the $140 stolen with Green.

Daniels testified that, the next morning, Green wanted to get rid of the gun, but Daniels's car had broken down, so Green called a "crack head" for a ride. Daniels testified that Green provided the directions and his friend drove them out of the area to discard the gun. Green got out of the car alone and threw the gun into a pond. The pond was a couple of blocks from where Daniels grew up, but

5

she maintained that Green had directed his friend to drive to that location. On cross-examination, however, she testified that she had suggested they drive to that location to discard the gun.

*Green's Statements to Police*

Nabors and his partner twice interviewed Green regarding Wooten's murder, and both interviews were audio-recorded and admitted at trial. After initially denying any involvement in Wooten's murder and denying knowing K.D., Green eventually told the officers that Wooten was killed by a "little wild young nigger" called "Loco," "because he crazy man." At the second interview, Nabors and his partner told Green that HPD had recovered the murder weapon and that they knew "K.D." was "Loco." In response, Green admitted giving a weapon to K.D. and stated that K.D. robbed Wooten because he needed money. He also admitted that he received $60 of the $140 K.D. took from Wooten and that his mother's "dope fiend" ex-boyfriend drove him to the pond near Daniels's grandparents' home to dispose of the murder weapon.

## Accomplice Witness

By his first issue, Green contends that Kristan Daniels's accomplice-witness testimony was not sufficiently corroborated, as required by article 38.14 of the Texas Code of Criminal Procedure.

## A.    Applicable Law

An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state.[1]  *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Under Texas law, a criminal conviction cannot be based on accomplice testimony unless corroborated by other evidence tending to connect the accused to the offense committed.  TEX. CODE CRIM. PROC. ANN. art. 38.14.

In order to review the sufficiency of corroborating evidence, "we exclude the accomplice testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense." *Hernandez v. State*, 454 S.W.3d 643, 647 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).  However, "it is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Smith v. State*, 332 S.W.3d

---

[1]    Regarding criminal responsibility for conduct of another, section 7.02 of the Texas Penal Code provides:
>    (a) A person is criminally responsible for an offense committed by the conduct of another if:
>    . . .
>    (2) Acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; . . .
>    (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.
>    TEX. PENAL CODE § 7.02.

425, 442 (Tex. Crim. App. 2011).  Instead, we view corroborating evidence in the light most favorable to the verdict.  *Brown v. State*, 270, S.W.3d 564, 567 (Tex. Crim. App. 2008).  "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Smith*, 332 S.W.3d at 442.

Corroborating evidence need not directly connect the defendant to the crime, and standing alone, it need not be sufficient to establish guilt.  *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).  More simply, the evidence need only link the accused to the offense in some way such that a rational trier of fact could conclude that the evidence tended to connect the accused to the offense.  *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).  Corroborating evidence may be direct or circumstantial.  *Smith*, 332 S.W.3d at 442.

**B.    Analysis**

Assuming arguendo that Kristan Daniels was an accomplice witness, we conclude that independent evidence tends to connect Green to Wooten's murder, such that her testimony was sufficiently corroborated under article 38.14.  In his recorded statements to police, which were played for the jury, Green identified K.D. as the shooter and explained that K.D. robbed Wooten because he needed money.  Green further admitted in his statements that he provided K.D. with a gun, received a portion of the money stolen from Wooten, and disposed of the gun after

8

K.D. returned it to him. Based on this evidence, the jury could have rationally found that the corroborating evidence tended to connect Green to Wooten's murder. *Smith v. State*, 436 S.W.3d 353, 370–71 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (concluding that nonaccomplice evidence of defendant's flight, connection to weapon, and association with accomplice at or near time of offense sufficiently connected defendant to offense)

We overrule Green's first issue.

## Jury Charge

Green's second and third issues challenge the adequacy of the jury charge. In his second issue, Green contends that the trial court erred by failing to instruct jurors that Daniels was an accomplice as a matter of law. In his third issue, Green contends that the trial court's accomplice-in-fact instruction was inadequate because it failed to instruct jurors that Daniels could be an accomplice as a co-conspirator.

### A. Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also*

*Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171.

**B.      Applicable Law**

An accomplice participates before, during, or after the commission of a crime and acts with the required culpable mental state. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (citing *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999)). "The participation must involve an affirmative act that promoted the commission of the offense with which the accused is charged." *Id.* (citing *Kutzer*, 994 S.W.2d at 187).

If one is susceptible to prosecution for the offense charged against the accused or a lesser included offense, that individual is an accomplice as a matter of law. *Kutzner*, 994 S.W.2d at 187; *Blake v. State*, 971 S.W.2d 451, 454–55 (Tex. Crim. App. 1998). "The trial court is under no duty to instruct the jury unless there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law." *Paredes*, 129 S.W.3d at 536. If, however, the evidence is conflicting such that it is not clear whether the witness is an accomplice, then the trial court must instruct the jury to determine whether that inculpatory witness is an accomplice as a matter of fact. *Paredes*, 129 S.W.3d at 536; *Blake*, 971 S.W.2d at 455.

## C. Analysis

### 1. Accomplice as a matter of law

The charge instructed the jury that it could find that Daniels was an accomplice. Green contends that the trial court erred by not instructing the jury that Daniels was an accomplice as a matter of law whose testimony thus could not be relied upon unless corroborated by other evidence tending to connect Green with the charged offense. Even were we to find error, Green was not egregiously harmed by the omission. Because Green offered no objections to the jury charge, to be entitled to reversal, he must show that such error was so egregious and created such harm that he was deprived of a fair and impartial trial. *Almanza*, 686

S.W.2d at 171. "Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). To determine the strength of non-accomplice evidence, "we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Id.* "[A]s the corroborating evidence gains in strength to the point that it becomes implausible that a jury would fail to find that it tends to connect the accused to the commission of the charged offense, then . . . the only resultant harm is purely theoretical and . . . there is no occasion to reverse the conviction . . . ." *Casanova v. State*, 383 S.W.3d 530, 539–40 (Tex. Crim. App. 2012).

As already discussed, here, strong corroborating evidence—including Green's own statements to police—connects Green to the charged offense. An eyewitness at the scene provided a description of the shooter matching K.D. By Green's own admissions, the jury was told (1) that K.D. wanted money, (2) that Green knew Wooten was a drug dealer, and thus relatively unlikely to report a robbery, (3) that Green sold or loaned a gun to K.D., (4) that K.D. returned the gun to Green after the shooting, (5) that Green disposed of the weapon the next day,

12

and (6) that K.D. split the money he took from Wooten with Green. This evidence tends to connect Green with the commission of the offense. Green's statements to police are not inherently incredible and Green does not argue that his statements are unreliable. Given the strength of the evidence, we conclude that Green has failed to show that he suffered egregious harm. *See Casanova*, 383 S.W.3d at 539–40; *Herron*, 86 S.W.3d at 632.

We overrule Green's second issue.

### 2. Accomplice-in-fact instruction

Green further contends that the trial court erred by failing to instruct the jury that Daniels could be an accomplice as a co-conspirator. An accomplice-witness instruction is required when the evidence raises the question of whether a witness is an accomplice under a party-conspirator theory. *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013). Here, the trial court's jury charge instructed jurors that Green could be held criminally responsible for Wooten's death individually, as a party, or as a co-conspirator. In applying the law, the charge identified K.D. "and/or" Daniels as potential parties or co-conspirators. In instructing the jury with regard to accomplice-witness testimony, however, the trial court's charge did not explain that a co-conspirator could be an accomplice-witness. We agree that the evidence raised a question as to whether Daniels might be an accomplice under a party-conspirator theory, and thus conclude that the trial

court erred in omitting co-conspirator liability from its accomplice-witness instruction. *See id.*

Having found error, we next consider whether the error egregiously harmed Green. Because Green did not offer an objection to the trial court's charge, he is entitled to reversal only upon a showing of egregious harm. *Almanza*, 686 S.W.2d at 171. As discussed above, sufficient non-accomplice testimony was presented at trial to tend to connect Green to the charged offense such that only theoretical harm could result from the trial court's failure to instruct the jurors that Daniels could be an accomplice-witness as a co-conspirator. Thus, we conclude that Green has not demonstrated that he was egregiously harmed by the trial court's failure to include conspirator liability in its accomplice-witness instruction. *See Herron*, 86 S.W.3d at 633–34 (concluding that appellant not egregiously harmed by error in omitting accomplice-witness instruction because non-accomplice evidence clearly connected appellant to offense).

We overrule Green's third issue.

### Sufficiency of the Evidence

In his fourth issue, Green challenges the sufficiency of the evidence to support his conviction for capital murder under a conspirator theory of liability because the State failed to show that he should have anticipated that murder could result from robbing Wooten at gunpoint.

## A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We consider the sufficiency of the evidence measured against the elements of the offense as defined by a hypothetically correct jury charge—*i.e.*, one that accurately sets out the law and adequately describes the offense charged without increasing the State's burden of proof or restricting the State's theories of liability. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any of the theories." *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

On appeal, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We therefore

resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991), and "defer to the [trier of fact's] credibility and weight determinations . . . ." *Marshall v. State* 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

## B.   Applicable Law

Under Texas law, a person commits the offense of capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat. TEX. PENAL CODE § 19.03(a)(1)–(2).

Pursuant to section 7.01 of the Texas Penal Code, an individual can be convicted as a party to an offense if that offense was committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE § 7.02(a)(2). If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was

committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. TEX. PENAL CODE § 7.02(b).

**C. Analysis**

By a general verdict, Green was found guilty of capital murder for causing Wooten's death in the course of robbing Wooten, in violation of section 19.03(a)(2) of the Texas Penal Code. The trial court's jury charge allowed the jury to find Green guilty individually, as a party, or as a co-conspirator, pursuant to sections 7.01, 7.02(a)(2), and 7.02(b) of the Texas Penal Code. Where, as here, the jury charge authorizes conviction on multiple theories, we must uphold the jury's verdict if the evidence is sufficient under any of the multiple theories. *Hooper*, 214 S.W.3d at 14. We conclude that sufficient evidence supports Green's conviction as a conspirator.

To convict Green for capital murder as a conspirator, the State was required to prove beyond a reasonable doubt that (1) Green was a party to a conspiracy to commit aggravated robbery, (2) in the attempt to commit aggravated robbery, one of Green's co-conspirators intentionally caused Wooten's death, (3) Wooten's murder was committed in furtherance of the conspiracy to commit aggravated robbery, and (4) Green should have anticipated Wooten's murder could result from carrying out the aggravated robbery. *See* TEX. PENAL CODE §§ 7.02(b),

17

19.02(b)(1), 19.03(a)(2); *see also Canfield v. State*, 429 S.W.3d 54, 66–67 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Green argues that insufficient evidence supports his conviction as a conspirator because the evidence does not show that he should have anticipated that Wooten's murder could result from carrying out the conspiracy to commit aggravated robbery. Green maintains that, based on his familiarity with Wooten and the fact that Wooten was a drug dealer, he would not have anticipated that Wooten would resist being robbed. Green further maintains that, given his limited familiarity with K.D., he would have had no reason to expect K.D. to be violent or impulsive.

Notwithstanding Green's contrary arguments, viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supports Green's conviction as a conspirator. In the course of his first interview, Green explained to the investigating officers that K.D. was a member of the Crypt gang, associated with both Crypts and Bloods, and was called "Loco" "because he crazy man." According to testimony from Daniels, Green provided K.D., or "Loco," with a loaded weapon. Green acknowledged to officers in his recorded statement that HPD might find his DNA on the murder weapon, if recovered, because he had given it to "Loco." Green was familiar with Wooten and knew that he was a drug dealer. Daniels testified that Green pointed out Wooten to K.D. shortly before the

18

offense.  In sum, the evidence showed that Green conspired with a known gang member referred to as "Loco" to rob a known drug dealer at gunpoint.  Based on such evidence, we conclude that the State adduced evidence from which a rational trier of fact could have determined beyond a reasonable doubt that Green should have anticipated Wooten's murder could result from carrying out the conspiracy to commit aggravated robbery.  *See Canfield*, 429 S.W.3d at 66–70 (concluding that murder should have been anticipated when armed conspirator robbed drug dealer); *Love v. State*, 199 S.W.3d 447, 453 n.1 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Evidence that a defendant knew his co-conspirators might use guns in the course of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery."); *Whitmire v. State*, 183 S.W.3d 522, 526–27 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (concluding that murder should have been anticipated in attempting aggravated robbery of drug dealer).

Accordingly, we overrule Green's fourth issue.

## Conclusion

We affirm the trial court's judgment.

                                        Rebeca Huddle
                                        Justice

Panel consists of Justices Keyes, Brown, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).