PD-1232&1233-17

# IN THE COURT OF CRIMINAL APPEALS

**JOHN B. ISBELL,**

      **APPELLANT**               **NO. PD-1232-17 and**

**V.**                         **NO. PD-1233-17**

**THE STATE OF TEXAS,**

      **APPELLEE**

---

*APPELLANT'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBERS 02-14-00124-CR, AND 02-14-00125-CR AFFIRMING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBERS 1290119D AND 1290121D IN CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TEXAS; THE HONORABLE MIKE THOMAS, PRESIDING.*

---

BARRY G. JOHNSON
State Bar. No. 10683000
2821 E. Lancaster
Ft. Worth, Texas 76103
Barrygj@aol.com
817-531-9665
817-534-9888 FAX
Attorney for Appellant
barrygj@aol.com

# IDENTITIES OF JUDGE, PARTIES, AND  COUNSEL

The case was tried before Honorable Mike Thomas, Judge, Criminal District Court No. 4, Tarrant County.

The parties to the case are Appellant, John B. Isbell, and Appellee, the State of Texas.

Mr. J. Steven Bush, 714 Main Street, Suite 200, Fort Worth, texas 76102 represented appellant at trial.

Ms. Paige Simpson and Ms. Brooke Panuthos, Assistant  District Attorneys of Tarrant County, 400 w. Belknap, Fort worth, Texas 76196, represented the State of Texas at trial.

Mr. Barry G. Johnson, 2821 E. Lancaster, Fort Worth, Texas 76103, represents appellant on appeal.

Ms. Debra Windsor, Assistant  District Attorney of Tarrant County, 400 W. Belknap, Fort Worth, Texas 76196, represents the State of Texas on appeal.

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                5

STATEMENT REGARDING ORAL ARGUMENT                   5

STATEMENT OF THE CASE                               5

STATEMENT OF PROCEDURAL HISTORY                     5

THE COURT OF APPEALS OPINION                        6

QUESTION FOR REVIEW

Where multiple offenses occurring over two days cases are consolidated and where the only evidence directly connecting the appellant to the July 17 offenses is accomplice witness testimony, did the court of appeals err in holding that (1) appellant was not harmed by the consolidation, and (2) appellant was not harmed in the July 18 cases by the failure to give an accomplice witness instruction concerning the day one cases ?

REASONS FOR GRANTING REVIEW

In this case of first impression, two similar offenses occurRed on consecutive days, and since the appellant did not get the benefit of a required accomplice witness instruction on the day one cases, the evidence connecting him with the day one offenses was prejudicial to him when the jury considered his intent to harm an officer on the day two offenses. The interrelationship of the error in consolidating the cases and the error in failing to give an accomplice witness instruction on the day one cases should require reversal.

                                                    6

ARGUMENT                                            6

        The court of appeals erred in holding appellant was not harmed by the consolidation and failure to give an accomplice witness instruction.

CONCLUSION                                              11

PRAYER                                                  11

CERTIFICATE OF COMPLIANCE                                13

CERTIFICATE OF SERVICE                                  13

COURT OF APPEALS OPINION…………………………………..Appendix

## INDEX OF AUTHORITIES

| CASES | PAGE |
|---|---|

Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998),…………..10

Llamas v. State,12 S.W.3d 469(Tex. Crim. App. 2000)………….8

## STATEMENT CONCERNING ORAL ARGUMENT

Appellant does not request oral argument on the issue of the grant or denial of the petition for review.

## STATEMENT OF THE CASE

Appellant was charged by four separate indictments with the felony offenses of attempted capital murder (tried on the lesser offense of aggravated assault on a public servant (and for using a deadly weapon), evading arrest or detention using a vehicle(and for using a deadly weapon), assault on a public servant, and deadly conduct. Appellant entered a plea of not guilty to each charge, the court consolidated the cases for trial upon motion of the state, over objection of appellant, and trial was held before a jury, which found appellant guilty of all charges and found the special issue of using a deadly weapon to be true.

Sentencing was before the Court, which sentenced Appellant to forty-five years confinement for assault on a public servant, twenty years for deadly conduct, forty-five years for assault on a public servant, and twenty years for evading arrest in

a vehicle.

## STATEMENT OF PROCEDURAL HISTORY

On March 16, 2015, the Court of Appeals reversed and remanded the cases. On the state's Petition for Discretionary review, The Court of Criminal Appeals reversed the instant cases and remanded them back to the Court of appeals for consideration of other grounds of error on November 2, 2016. On August 17, 2017, the Court of Appeals affirmed the convictions in its Opinion Following Remand and Motion for Rehearing. A subsequent motion for rehearing was denied on September 14, 2017.

## THE COURT OF APPEALS OPINION

The Court of appeals held that Appellant was not harmed by the consolidation because , if the cases had been tried separately, the evidence of the July 17 events would have been admissible as contextual evidence, and if no accomplice witness instruction was given in the seperate trial, appellant would be unable to shoW harm as to that error if convicted of the July 18 offenses.

The court noted that there was much non-accomplice testimony concerning the July 18 offenses.

.                          QUESTIONS FOR REVIEW

Was the court of appeals correct in holding that Appellant was not harmed by consolidation of the cases and was not harmed by the failure to give an accomplice witness instruction ?

### REASONS FOR GRANTING REVIEW

Appellant contends that this court should give consideration to granting the petition because it concerns an important question of state law that should be decided by this court, specifically the interaction between the consolidation of cases rule, 3.04 (a) Texas Code of Criminal Procedure, and the accomplice witness rule, and whether harm caused by errors with respect to both of these matters can be cumulatively considered.

# ARGUMENT

On July 17, 2012, a high speed police chase occurred, and shots were fired from the fleeing Jeep. On July 18, 2012, the same Jeep was again involved in a police chase, after which appellant was arrested after exiting the vehicle. Appellant was charged with two cases from July 17, and two cases from July 18. The only evidence linking appellant to the July 17 chase was testimony from accomplice, Jamie Haney, who testified that both she and Isbell were in the Jeep during both chases. Isbell appeals his convictions for the July 18 offenses in this appeal.

The right to severance of cases rests upon two legitimate concerns: (1) that the jury may convict a "bad man" who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds—and (2) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged. Llamas v. State, 12 S.W.3d 469 (Tex. Crim. App. 2000).

The purpose of the accomplice witness instruction is to protect an accused from conviction based solely on the testimony

of a person involved in an offense who may have incentive to minimize his/her own involvement, and to exaggerate or invent the involvement of another person.

In this case the courts have found that Article 304 (a) was violated in that the cases should not have been consolidated for trial over appellant's objection (Second Court Opinion, p.9), and that the trial court erred in failing to give an accomplice witness instruction to the jury. (Opinion, p.5)) The court found that appellant was not harmed by the errors in these cases.

Appellant contends that these errors taken together resulted in an unfair trial, and violated the substantial rights of appellant.

With regard to consolidation, the court held that the accomplice witness testimony of Jamie Haney concerning the the July 17 offenses would have been admissible as "contextual evidence" relevant to the July 18 offenses. Opinion, p.9.

Interestingly, the Court of Appeals assumes a "hypothetically incorrect" jury charge in making this determination. The court sets out a scenario under which the July 18 cases are tried separately from the July 17 cases (as this court confirmed should have happened in its opinion on September2, 2016, in PD-0470-15). The

9

court further assumes that no accomplice witness instruction would be given, and that , as a result, appellant would have no reversible error because Isbell would be unable to show harm. Opinion, p.9.

Appellant asks this court to assume that under such a scenario a correct jury charge including an accomplice witness instruction concerning the extraneous offenses of July 17 would be given. Under such circumstances appellant contends that the hypothetical jury would not have been able to consider the July 17 offenses because there would have been no corroboration of the Jamie Haney testimony connecting appellant with the July 17 offenses.

Regarding the accomplice witness rule, in Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998), the Texas Court of Criminal Appeals held, "[This] rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." In conducting a sufficiency review under the accomplice witness corroboration rule, then, a reviewing court must "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is other evidence that tends to connect the accused with the commission of the crime."

Appellant contends that he was harmed by the consolidation because of the prejudice to the July 18 cases caused by the evidence of the July 17 cases. On July 17, accomplice witness Haney testified that as she drove the jeep, appellant fired shotgun blasts at police vehicles chasing the Jeep. Reperter's record, V. _ , P. _ No evidence other that Haney's testimony connected Appellant to the July 17 offenses.

With respect to the July 18 offenses, Appellant concedes that there is significant evidence of Appellant's guilt of the offense of Evading Arrest in a Vehicle. But appellant asserts that the evidence of his intent to assault an officer with his vehicle during the course of the evasion is far from oberwhelmimg, and is, in fact, ambiguous.

Appellant's actions in driving the vehicle were arguably done in an attempt to evade arrest, rather than to cause harm to an officer.

Extreme harm and prejudice to appellant was caused by the admission of the accomplice testimony about the July 17 events concerning firing a shotgun at pursuers of the Jeep. Once the jury heard about the July 17 shotgun blasts, without the caution mandated by the limiting instruction of the accomplice witness instruction, conviction of the aggravated assault on a public servant was was virtually assured, as was the special issue as to using a deadly weapon. A person who would fire a shotgun at pursuing officers would be more than willing to run an

officer down with a vehicle, the jury no doubT concluded. If the proper accomplice witness instruction had been given, the jury would not have been able to consider the July 17 evidence, since there was no corroboration at all of Haney's testimony.

## CONCLUSION

The court of appeals erred in its holding that Appellant was not harmed by the consolidation of the cases and the lack of accomplice witness instruction.

## **PRAYER**

Appellant prays that this court reverse and remand both convictions, or in the alternative, to reverse and remand the aggravated assault on a police officer conviction, and to remand it for a new trial, and for such other relief as he may show himself to be entitled.

Respectfully submitted,

/s/_Barry G. Johnson

Barry G. Johnson
SB#
106830002821
2821 E.Lancaster
Fort Worth, Texas 76103 817-531-9665
817-534-9888 FAX
barrygj@aol.com

Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the requirements of Tex.R.App.P. 9.4(e) because it has been prepared with conventional typeface no smaller than 14 point for text. This document also complies with the word count limitations of Rule 9.4(i)(1) because it contains 2,034 words, excluding any parts exempted by Rule 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/Barry G. Johnson
Barry G. Johnson

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document upon Debra Windsor , Attorney for Appellee, by eserve, and upon the State Prosecuting Attorney, by eserve, on this the 13th day of December, 2017.

/s/Barry G. Johnson
Barry G. Johnson



JOHN B. ISBELL

THE STATE OF TEXAS

# COURT OF APPEALS SECOND DISTRICT OF TEXAS FORT WORTH

**NO. 02-14-00124-CR NO. 02-14-00125-CR**

V.

----------

APPELLANT

STATE

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY TRIAL COURT NOS. 1290119D, 1290121D

----------

1

----------

Appellant John B. Isbell filed a motion for rehearing regarding the court's

opinion and judgment issued May 25, 2017. Although we deny his motion, we withdraw the opinion and judgment previously issued and substitute the following in their place. *See* Tex. R. App. P. 49.



On remand, we are asked to determine if appellant Isbell suffered harm because the offenses of aggravated assault and evading arrest or detention, occurring on July 18, 2012, were consolidated for trial with two offenses occurring on July 17, 2012—aggravated assault on a public servant and deadly conduct. We also must decide if the State's jury arguments were improper and, if so, harmful to Isbell. Because the consolidated trial did not harm Isbell and because the challenged jury arguments were permissible, procedurally defaulted, or harmless, we affirm the trial court's judgments.

On July 17, 2012 at approximately 7:40 a.m., Officer Steven Graves with the Azle Police Department ran a routine license-plate check on a Jeep stopped at a red light and discovered that a warrant was attached to the car for Jonathan Garret, a white male born in 1972. In the Jeep, Graves saw a woman in the driver's seat, later identified as Jamie Haney, and a white man in the front passenger seat whom Graves believed was about the same age given for Garret. Graves turned on his patrol car's red and blue lights to initiate a traffic stop, but

2

relevant facts, we feel it necessary to recount them again to provide context for our discussion of the legal issues that have been remanded to this court. *See Isbell v. State*, Nos. 02-14-00124-CR, 02-14-00125-CR, 02-14- 00126-CR, 02-14-00127-CR, 2015 WL 1407749, at *1–2 (Tex. App.—Fort Worth Mar. 26, 2015) (mem. op., not designated for publication), *aff'd in part and rev'd in part*, Nos. PD-0469-15, PD-0470-15, PD-0471-15, PD-0472-15, 2016 WL 6520211, at *1–2 (Tex. Crim. App. Nov. 2, 2016) (unpublished op.).



2

turned on the siren after the Jeep did not stop. Haney turned on her blinker as if she were pulling over, and Graves saw the passenger turn around and aim a shotgun at him. Graves swerved to avoid any gunfire, called for backup, and continued to follow the Jeep with his lights and siren on. The Jeep reached a speed of 85 miles per hour through speed-limit zones that ranged from 40 to 60 miles per hour and frequently drove on the shoulder to pass other cars. Graves saw the passenger "leaning outside the passenger's side window with the shotgun waving it around, so pointing it back at [Graves], pointing it all over the place." Graves eventually lost sight of the Jeep in traffic.

Kelly Orr, who had been driving to work that morning, saw the Jeep come up behind her and heard a loud booming noise. The car was driving "[e]rratically, aggressive, in and out of traffic," eventually crossing a grassy median into the other direction of traffic. Orr later discovered bullet holes in her rear bumper and license plate. Azle police received information that a shotgun had been thrown out of a vehicle being pursued. They recovered the shotgun from the road along with a spent shell and a damaged shell in a different location. A firearm and toolmark

examiner later was able to determine that the spent shell had been fired from the found shotgun.

Around 9:00 p.m. the next evening—July 18, 2012—Haltom City Police Sergeant Cody Phillips saw the Jeep, which he identified based on a bulletin from the Azle Police Department, parked in a residential area. The Jeep began to drive off and accelerated quickly after Phillips attempted to pull the Jeep over.

3

Phillips and two additional police officers in separate cars chased the Jeep for

about 70 miles per hour in 30-mile-per-hour zones, ran into cars on the highway, jumped medians, and reached speeds of about 115 or 125 miles per hour. During the chase, the driver of the Jeep—Isbell—turned the car's headlights off. The Jeep spun out trying to turn and drove down the wrong side of the road into oncoming traffic. It also rammed a Haltom City police patrol car while an officer—Officer Robert Parsons—was inside. The Jeep eventually hit a mailbox in front of a house and came to a stop. Haney, who was in the front passenger seat, and Isbell got out and began running. Both were eventually caught and arrested. Haney admitted that on July 17, Isbell had a shotgun in the car and that it "went off" while she was pursued by Graves.

## B. PROCEDURAL

Isbell was charged by indictment for aggravated assault on a public servant with a shotgun on July 17, deadly conduct on July 17, evading arrest or detention with a vehicle on July 18, and aggravated assault on a public servant with a vehicle on July 18. The trial court granted the State's motion to consolidate the four offenses for trial over Isbell's objection. At trial, Haney identified Isbell as her male passenger on July 17. A jury found Isbell guilty on all



four counts. The trial court assessed his punishment at concurrent terms of forty-five, twenty, twenty, and forty-five years' confinement, respectively.

On appeal, we held that the trial court erred by failing to instruct the jury on the accomplice-witness rule because no evidence linked Isbell to the July 17 events other than Haney's testimony. *Isbell*, 2015 WL 1407749, at *3. Because we concluded that this error egregiously harmed Isbell and that this harm permeated the entire trial, we reversed each of the trial court's judgments and remanded for a new trial. *Id.* The court of criminal appeals agreed that the absence of the requested accomplice-witness instruction egregiously harmed Isbell in connection with the July 17 offenses—aggravated assault on a public servant with a shotgun and deadly conduct—but disagreed that this same error egregiously harmed him in connection with the July 18 offenses—evading arrest or detention with a vehicle and aggravated assault on a public servant with a vehicle:

In his brief in the court of appeals, Isbell claimed that he was egregiously harmed because Haney's testimony was the only evidence the jury could have relied on to convict him of the . . . July 17 offenses. He did not claim that he was harmed by the omission [of the accomplice-witness instruction] as it related to the July 18 offenses. . . . Because we conclude the reliable non-accomplice evidence overwhelmingly connects Isbell to the July 18 offenses, we hold that he was not egregiously harmed by the accomplice-witness instructions' omission as to those offenses [i.e., the July 18 offenses].

5

*Isbell*, 2016 WL 6520211, at *3. Accordingly, the court of criminal appeals affirmed our judgments regarding the July 17 offenses, but remanded the July 18 offenses

## II. CONSOLIDATION

Isbell first argues that the trial court erred by granting the State's motion to consolidate the four offenses for trial. He asserts he was harmed because facts regarding the July 17 offenses were heard by the same jury, eviscerating his defense to the July 18 offenses, which "was that he did not intend to drive toward the officer . . . and did not intend to ram [his] vehicle . . . but instead was intending to flee." The State agrees that the July 17 offenses should have been tried separately from the July 18 offenses, but asserts that Isbell was not harmed by the error. *See* Tex. Penal Code Ann. § 3.04(a) (West 2011).

Because the trial court erred by denying Isbell his absolute right to separate trials upon request, we review the error under the nonconstitutional harm analysis and disregard it unless it adversely affected Isbell's substantial rights. *See* Tex. R. App. 44.2(b); *Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013). Isbell argues that he was harmed because the jury's consideration of the July 17 events, admitted through Haney's testimony, "made

4

challenges the trial court's consolidation of the July 18 offenses with the July 17 offenses for trial over his objection and the propriety of the State's jury arguments. These issues were also raised in his original brief directed to all four convictions.



6

it much more likely that the jury would believe that he intended to threaten or harm Officer Parsons with the vehicle on July 18."

In assessing harm, we look to the entire record. *See Werner*, 412 S.W.3d at 547. The court of criminal appeals has explained that harm will most likely result if the State tries "apples" offenses with "oranges" offenses—offenses that have no overlap of evidence and are similar only in the fact that the defendant committed both. *Id.* at 548–49. But if "there is a substantial overlap of evidence between the . . . charges" and if evidence of one offense would be admissible in a separate trial for the other offense for reasons other than to show the defendant "was a bad man who had acted badly before," the error in failing to sever "is most likely to be harmless." *Id.* Indeed, the overlap of evidence that would have been admissible had the trials been severed is the most important factor in deciding harm even though we are to review the entire record. *See id.* at 549; *Walls v. State*, No. 03-12-00055-CR, 2014 WL 1208017, at *3 (Tex. App.—Austin Mar. 20, 2014, no pet.) (mem. op., not designated for publication).

Here, the evidence of the July 17 offenses would have been admissible at a separate trial for the July 18 offenses. Isbell and Haney were in a Jeep on July 17 that evaded detention and involved the passenger—Isbell—waving a shotgun at the pursuing officer. The next day, Isbell was seen driving the same Jeep, with Haney as a passenger, and an officer tried to pull the Jeep over based on a police

bulletin regarding the July 17 offenses. Isbell led these officers on a high- speed chase, ramming into several cars on the freeway and an occupied police

7

car. After Isbell ran into a mailbox, he and Haney unsuccessfully attempted to flee on foot.

As the State points out, these offenses were "intermixed, or blended with one another," and provided context for each other; thus, the July 17 offenses would have been admissible at a separate trial of the July 18 offenses. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). The fact that Phillips attempted to stop the Jeep on July 18 and that Isbell immediately sped away required explanation, justifying admission of the July 17 events as necessary to the jury's understanding of the July 18 events and to elements of the resulting offenses. *See* Tex. R. Evid. 403, 404(b); *Devoe v. State*, 354 S.W.3d 457, 469–70 (Tex. Crim. App. 2011); *Beltran v. State*, 517 S.W.3d 243, 248–49 (Tex. App.—San Antonio 2017, no pet.); *Fruge v. State*, Nos. 03-14-00722-CR, 03-14-00723-CR, 03-14-00724-CR, 2015 WL 7969209, at *5 (Tex. App.—Austin Dec. 3, 2015, pet. ref'd) (mem. op., not designated for publication); *Parks v. State*, 463 S.W.3d 166, 171–72 (Tex. App.—Houston [14th Dist.] 2015 no pet.). Further, the evidence of the July 17 offenses would have rebutted Isbell's admitted theory that his hitting the police car on July 18 was an accident. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

On rehearing, Isbell argues that he was harmed by the consolidation of the four offenses for trial because he did not receive an accomplice-witness instruction regarding the July 17 events admitted as extraneous-offense evidence regarding the July 18 offenses. In other words, he asserts that had the offenses

8

not been consolidated for trial, he would have been entitled to an accomplice-witness instruction in the trial of the July 18 offenses directed to Haney's testimony regarding the contextual, extraneous-offense evidence—her testimony regarding the July 17 events. But even if the July 18 offenses had been tried separately, if Haney's testimony regarding the July 17 events had been admitted as contextual evidence for the July 18 offenses, and if Isbell had been erroneously denied an accomplice-witness instruction directed to Haney's testimony regarding the July 17 events, Isbell would be unable to show harm arising from the erroneous consolidation affecting his substantial rights. *See* Tex. R. App. P. 44.2(b).

As stated by the court of criminal appeals, much non-accomplice evidence connected Isbell to the July 18 offenses:

The evidence, including several officers' testimony and dash-cam video, established that Isbell, with Haney beside him, led police on a high-speed chase. After ramming the Jeep into a police car while an officer was behind the wheel and crashing into a mailbox, Isbell and Haney abandoned the car and fled on foot. After a brief chase through a neighborhood, the two were apprehended. The officers positively identified Isbell as the Jeep's driver on July 18.

*Isbell*, 2016 WL 6520211, at *3. The court of criminal appeals expressly found that this "credible and reliable" evidence was "quite compelling" and "convincingly connect[ed]" Isbell to the July 18 offenses. *Id.* Accordingly, the absence of an accomplice-witness instruction directed to Haney's extraneous, contextual evidence would not result in harm affecting Isbell's substantial rights as to his

convictions for the July 18 offenses, which were the only offenses remanded to this court and were supported by "compelling" non-accomplice evidence. *Id.*; *see Werner*, 412 S.W.3d at 549–51 ("Overwhelming evidence of guilt is a relevant factor in any Rule 44.2(b) harm analysis, and, considering the overwhelming evidence that proved the April incident, any evidence of the significantly less threatening July incidents would have impacted the jurors' deliberations only marginally, if at all." (footnote omitted)); *Torres v. State*, No. 01-13-00300-CR, 2014 WL 4374119, at *3–4 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, pet. ref'd) (mem. op., not designated for publication) ("Because the same evidence would have been admissible had the charges been severed and nothing else in the record shows that the erroneous consolidation affected appellant's substantial rights, we find that the trial court's refusal to sever was harmless error."); *cf. Green v. State*, 495 S.W.3d 563, 570–71 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding failure to give accomplice-witness instruction not egregiously harmful because "strong" non-accomplice evidence connected defendant to crime). We overrule this issue.

## III. JURY ARGUMENT

In his next issue, Isbell asserts that the State made three improper closing arguments to the jury, which harmed him. To be permissible, the State's jury argument must be (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea

for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). We overrule this issue for the following reasons.

## A. ARGUMENT REGARDING PHILLIPS

Isbell first complains that the State impermissibly shifted the burden of proof to him by arguing that his attorney could have questioned Phillips regarding his status as a certified peace officer, which was an element of the offense of evading arrest or detention. He also asserts that portions of this argument impermissibly attacked Isbell's counsel and, thus, Isbell indirectly. After Isbell's counsel, during his closing jury arguments, questioned Phillips's status as a certified peace officer, the State addressed the contention:

Just to get one thing out of the way right now, Officer Phillips testified he is a certified peace officer. You have a definition in the jury charge, if you need it, in case you didn't know what a peace officer meant. That's what the definition is. Officer Phillips has testified, I am a certified peace officer. That is sufficient for you-all to know he's a licensed police officer lawfully discharging his duties. . . . Officer Phillips testified. I [met] that definition.

He was not crossed on any additional questions. If Defense counsel wanted to challenge the idea that Officer Phillips is not a certified peace officer, he could have done so. He did not. That is because Officer Phillips is a lawfully licensed peace officer. And I ask you not to get hung up on something so ridiculous as that.

Isbell raised no objection to this argument at trial and does not contend on appeal that he did so. Absent an objection to jury argument at trial, nothing is presented for review. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). Even if preserved, these arguments are meritless—the State may rebut defense counsel's argument attacking the State's evidence without shifting the

burden of proof or impermissibly attacking the defendant through his counsel. *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993).

## B. ARGUMENT REGARDING LAWFULNESS OF TRAFFIC STOP

Isbell next argues that the State impermissibly argued outside the record and misstated the law through the following jury argument, to which Isbell objected and which occurred immediately after the State's "ridiculous" comment:

When you go through and you look at the law that the Judge gives you . . . you will not see anywhere in there anything about an illegal traffic stop [on July 18]. And the reason for that is that if this were an illegal traffic stop, we wouldn't be here on this charge. If Officer Gilley - -

[Counsel for Isbell]: Objection, Your Honor. I'm going to say that's outside the record. It's for the jury to decide whether the stop was reasonable - - or illegal under the circumstances, alleged in the indictment.

THE COURT: Overruled.

[Prosecutor]: If Officer Gilley and Officer Parsons and Officer Michlitsch and Officer Phillips were illegally trying to detain [Isbell], we would not be here on those charges.

[Counsel for Isbell]: I'm going to object - -

[Prosecutor]: The Judge is the judge of the law.

[Counsel for Isbell]: I'm going to object again because that's a misstatement of the law. It's for them to decide whether the - - the facts have been proved or not. And the question is whether it's been proved and not whether it's illegal.

THE COURT: Overruled.
[Counsel for Isbell]: She's misstating the law applicable to the case. THE COURT: Overruled.

12

[Prosecutor]: This is not an illegal traffic stop. If it were, we wouldn't be here. That's what I keep telling you. Because if it were, the Judge would have made that decision and we wouldn't be here.

Isbell is correct that the argument was a misstatement of the law. The trial court could not have determined pretrial the lawfulness of the July 18 traffic stop because that fact was an element of evading arrest. *See* Tex. Penal Code Ann. § 38.04(a); *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005).

But Isbell again is entitled to no relief. First, he failed to preserve the error for our review because he did not object after the prosecutor made the same argument for the third time nor had he previously asked for a running objection to the argument. *See Miller v. State*, No. 02-13-00194-CR, 2015 WL 1775657, at *2 (Tex. App.— Fort Worth Apr. 16, 2015, no pet.) (mem. op., not designated for publication) (collecting cases and holding that appellant's failure to object to same argument by the State, which was repeated after appellant's objection overruled, forfeited any error in the argument).

Second, this error, even if preserved, did not affect Isbell's substantial rights and must be disregarded. *See* Tex. R. App. P. 44.2(b). The State introduced evidence

that Phillips attempted to stop the Jeep based on the Azle Police Department's bulletin regarding the July 17 incident, which was a reasonable justification for the attempted stop. *See United States v. Hensley*, 469 U.S. 221, 232 (1985); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). As the court of criminal appeals recognized, the State's case regarding

13

the July 18 offenses was strong, preventing a conclusion that this remark by the State was harmful to Isbell in light of the entire record. *See Denton v. State*, 920 S.W.2d 311, 312–13 (Tex. Crim. App. 1996); *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990); *Guy v. State*, 160 S.W.3d 606, 617–18 (Tex. App.— Fort

Worth 2005, pet. ref'd). Indeed, Isbell does not suggest in his brief how prejudice

## C. ARGUMENT FOR JURY TO "ENFORCE THE LAW"

Isbell's final jury-argument contention is directed to comments the State made in response to Isbell's counsel's argument that the high-speed chase on July 18 was overkill based on a traffic violation:

[The attempted stop on July 18] is what you would expect of your police officers, because they are the only ones that keep us safe. They're the ones who are charged with dealing with dangerous criminals, like this guy, who thinks he can run from the police and come in here and argue, well, because the police were committing some dangerous acts, I should get away. Please reward me because I was dangerously driving on the roads, I was colliding with other vehicles, but the police should stop at that point, because then it becomes unsafe for everyone if the police are driving that way.

Defense counsel is asking you to disregard the law. I'm asking you to enforce the law. And if you believe - -

[Counsel for Isbell]: Your Honor, I'm going to object to the argument that I'm asking the jury to disregard the law. The standard on a motion to suppress is whether the Defense has proved that the search is illegal. The

however, Isbell should have at least "suggest[ed] in light of [the] record, how prejudice may or may not have occurred." *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000) (quoting Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* 1165 (2d ed. 1992)).



14

standard at trial is whether the prosecution has proved that the search is legal. They're completely different standards of proof. They're trying to put the burden on me, and I'm going to object to improper argument by the State.

THE COURT: Your objection is noted. Thank you. [Counsel for Isbell]: I need a ruling on the objection. THE COURT: It's overruled.

Isbell again asserts the State's argument that Isbell was asking the jury to disregard the law while the State urged enforcement shifted the burden of proof to Isbell. An assertion by the State that the defense's jury argument was an attempt to circumvent the applicable law does not shift the burden of proof from the State to the defendant. *Cf. Castro v. State*, No. 11-14-00095-CR, 2017 WL 922505, at *5 (Tex. App.—Eastland Feb. 28, 2017, no pet.) (mem. op., not designated for publication) (holding State's argument that appellant had not shown a prior "clean criminal record" was not impermissible burden shifting but was response to appellant's argument); *Tucker v. State*, 456 S.W.3d 194, 217– 18 (Tex. App.—San Antonio 2014, pet. ref'd) (holding State's argument that jury would have to find "elaborate scheme" to coach complainants was not improper burden shifting but was response to appellant's argument they had been coached); *Baines v. State*, 401 S.W.3d 104, 108–09 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding State's jury argument that appellant had "the same subpoena power" did not shift

the burden of proof). This was a permissible response to defense counsel's prior argument.

## IV. CONCLUSION

Because of the evidentiary overlap between the July 17 and the July 18 offenses, the trial court's failure to sever the offenses for trial did not affect Isbell's substantial rights. And the challenged jury arguments were either procedurally defaulted, permissible, or harmless. Therefore, we overrule Isbell's remaining points and affirm the trial court's judgments in the July 18 offenses. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL JUSTICE

PANEL: LIVINGSTON, C.J.; GABRIEL and KERR, JJ.

DO NOT PUBLISH Tex. R. App. P. 47.2(b)

DELIVERED: August 17, 2017

Print this page

# Case # PD-1232&1233-17

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 12/13/2017 10:34:12 PM |
| Case Number | PD-1232&1233-17 |
| Case Description | |
| Assigned to Judge | |
| Attorney | barry johnson |
| Firm Name | Barry G. Johnson |
| Filed By | barry johnson |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | BGJ criminal |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | 1892060 |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | | The petition for discretionary review does not contain a copy of the court of appeals |

| Other | 12/18/2017 02:57:10 PM | opinion [Rule 68.4(j)]. The court of appeals opinion attached to appellant's petition has blank pages every other page as well as other formatting issues. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| *Lead Document* | isbell pdr PDR 12.13.17 w opinion.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
| --- | --- | --- | --- | --- | --- |
| barry glen johnson barrygj@aol.com | Barry G. Johnson | EServe | Sent | Yes | Not Opened |